UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BALKARAM MOHAN,                                                    :

                 Petitioner,                     :        **OPINION**

               - v -                               :        24-cv-06909 (DC)

MARIEJOSEE KING, Superintendent of      :
Clinton Correctional Facility,

                              :

                 Respondent.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:          SPOLIN & DUKES P.C.
                         By:    Caitlin Dukes, Esq.
                              Aaron Spolin, Esq.
                        11500 W. Olympic Blvd., Suite 400
                        Los Angeles, CA  90064
                            Attorneys for Petitioner

                        MELINDA KATZ, Esq.
                        District Attorney, Queens County
                        By:    Johnnette Traill, Esq.
                                Ellen C. Abbot, Esq.
                                Assistant District Attorneys
                        125-01 Queens Boulevard
                      Kew Gardens, NY  11415
                            Attorney for Respondent

CHIN, Circuit Judge:

             On February 15, 2019, following a jury trial, petitioner Balkaram Mohan

was convicted in the Supreme Court of New York, Queens County (Buchter, *J.*), of

Predatory Sexual Assault Against a Child (N.Y. Penal Law § 130.96), Rape in the Third

Degree (*id*. § 130.25[2]), Incest in the Third Degree (*id*. § 255.25), and Endangering the Welfare of a Child (*id*. § 260.10[1]).  Dkt. 12 at 1012.  The court sentenced Mohan to an indeterminate prison term of thirteen years to life on the predatory sexual assault count, a prison term of four years and three years of post-release supervision on each of the rape and incest counts, and a prison term of one year for the endangering count.  Dkt. 12-1 at 115-17.  All sentences were to run concurrently.  *Id*.

After his conviction but before his sentencing, Mohan, through retained counsel, filed a motion to vacate his conviction under New York Criminal Procedure Law § 440.10 on May 1, 2019.  In the motion, he argued that he received ineffective assistance of counsel for two reasons.  Dkt. 12-2 at 58-70.  First, Mohan claimed that his counsel failed to file an alibi notice that would have allowed him to place allegedly exculpatory electronic toll collection records ("E-ZPass" records) before the jury.  *Id*. at 58-66.  Second, Mohan claimed that his counsel failed to inform him that he faced a maximum life sentence, and that he would have taken a plea if he had been given that information.  *Id*. at 66-70.  After a hearing, the New York Supreme Court (Buchter, *J*.) denied Mohan's § 440.10 motion on September 1, 2020.  *See* Dkt. 12-2 at 121-54.

On December 9, 2020, the Appellate Division, Second Department granted Mohan leave to appeal the denial of his § 440.10 motion and consolidated that appeal with his direct appeal.  *See* Dkt. 11-1 at 7.  With respect to his appeal of the trial court's § 440 decision, Mohan, through retained counsel, again argued that he was denied

effective assistance of counsel because his trial attorney failed to file an alibi notice and failed to inform him of his potential sentencing exposure. Dkt. 12-3 at 17-36. Mohan also presented three issues to challenge his conviction. *Id*. at 36-44. First, he argued that the trial court erred in precluding the E-ZPass records. *Id*. at 36-39. Second, Mohan challenged the court's preclusion of certain testimony by a relative of the victim. *Id*. at 39-42. Third, Mohan claimed that the cumulative weight of those evidentiary errors required reversal. *Id*. at 42-44.

The Appellate Division, Second Department affirmed Mohan's convictions, Dkt. 11-1 at 33-35; *People v. Mohan*, 187 N.Y.S.3d 289 (2d Dep't 2023) ("*Mohan I*"), and the New York Court of Appeals denied his application for leave to appeal, Dkt. 11-1 at 5; *People v. Mohan*, 40 N.Y.3d 930 (2023) (Rivera, *J.*) ("*Mohan II*").

On September 27, 2024, Mohan, through retained counsel, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the Eastern District of New York (the "Petition"). Dkt. 1. Respondent, represented by the Queens County District Attorney's Office, filed her Opposition on February 27, 2025. Dkt. 11. Mohan filed a Reply on April 14, 2025. Dkt. 14.

For the reasons that follow, the Petition is DENIED.

## STATEMENT OF THE CASE

### I.      The Facts[1]

The evidence at trial established the following:

From approximately February 2014 to November 2016, Mohan sexually abused his daughter, A.M.,[2] "several times a week," when she was 13 to 15 years old. Dkt. 12 at 341.  Sometimes, the abuse would occur at night in a bed that Mohan and A.M. shared.  *Id*. at 335.  Other times, the abuse would happen during the day on the couch when A.M.'s mother, D.M., was at work.  *Id*. at 337.  A.M. eventually disclosed the abuse to a doctor who reported the incidents to the Administration for Children's Services ("ACS").  *Id*. at 372, 593.  Mohan was arrested on February 23, 2017.

### A.      Background

A.M was born in Guyana, in 2001, to her parents, Mohan and D.M.  *Id.* at 329-30.  But until she was 12 years old, A.M. lived with her grandparents because both of her parents had left Guyana early in A.M.'s life to work in the United States.  *Id.* at 330.  D.M. entered the United States illegally, and with fake papers, because she was unable to obtain a visa to enter the country.  *Id.* at 524.

---

[1]      The facts are primarily drawn from the Respondent's brief submitted in opposition to Mohan's consolidated appeals in the Appellate Division in 2022.  *See* Dkt. 12-3 at 49-120.  Detailed citations to the trial transcript support that recitation of the facts.

[2]      In an order dated February 26, 2025, this Court granted the State's motion to seal portions of the state court record and refer to the victim and her mother by initials to protect the victim's identity. *See* Feb. 26, 2025 Minute Order.

In February 2014, A.M. moved to the United States and began living with her parents and baby brother, R.M., in a one-bedroom apartment. *Id.* at 331-32. During her first week there, A.M. slept in the bedroom with Mohan, D.M., and R.M. *Id.* at 333. Eventually, D.M. and R.M. began sleeping on the living room couch so that R.M. would not keep A.M. and Mohan awake, while A.M. and Mohan slept in the bedroom. *Id.* D.M. worked about four times a week as a waitress, with two of those shifts occurring at night. *Id.* at 334. Mohan worked in construction during daytime hours. *Id.* at 334-35.

**B.    *The Abuse***

Approximately two weeks after A.M. moved to New York, Mohan began sexually abusing her. *Id.* at 335. The first incident occurred while A.M. and Mohan "were on the bed, and he came on top of [her] and lift[ed] [her] shirt up, and he put his mouth on [her] boobs, on [her] breasts." *Id.* Mohan told A.M. that he "thought it was [her] mom," but this occurred while D.M. and R.M. were in the living room. *Id.*

The next incident came only a day later while, with D.M. at work and R.M. next door at their uncle's house, A.M. and Mohan were on the couch watching television. *Id.* at 336-37. Mohan "took his pants off, and he took [A.M.'s] pants off, and he put his penis in [her] vagina." *Id.* at 337. A.M. felt pain and bled, but she was scared to tell her mother, thinking D.M. "won't believe [her]" since A.M. had only just moved in with them and was not close to D.M. *Id.* at 338-39.

5

In March 2015, the family moved into a two-bedroom apartment in which A.M. was given her own room. *Id.* at 344. One week after moving in, Mohan "came to sleep with [A.M.] in [her] room," and began doing so "[e]very night until [D.M.] found out." *Id.* at 345. Mohan would tell A.M. that he "was obsessed" and "in love" with her. *Id.* When she asked him to stop, Mohan would say A.M. "probably ha[d] a boyfriend, and that as long as he is in the house, it's going to keep happening." *Id.* at 346.

Mohan raped A.M. "several times a week" over approximately two-and-a-half years. *Id.* at 341. A.M. was not on birth control, and Mohan wore protection only "sometimes." *Id.* at 342. A.M. "started to have feelings for him." *Id.* at 346. A.M. and Mohan acted "normal" because she did not want anyone to know what was occurring between them. *Id.* at 346. But the incidents were disclosed three times over this period.

C.    *The First Disclosure*

Approximately one month after moving into the new apartment, A.M. revealed the abuse to D.M. for the first time in April 2015. *Id.* at 348. After Mohan found out that A.M. had a Facebook account, he became upset and "came in [her] room, and he took the vacuum, and he hit [her], and he told [D.M.] to call [A.M.'s] uncle, Steve, and [told her] he was going to send [A.M.] back to Guyana." *Id.* In response to those threats, A.M. "told [Mohan] to tell [her] mom what was happening between the two of [them]." *Id.* at 348-49. Mohan had told A.M. "not to tell [D.M.] anything," but A.M. "told [D.M.] that [her] dad ha[d] been having sex with [her]." *Id.* at 350. D.M.

6

cried and told Mohan to get out. *Id.* at 351. D.M. said she believed A.M. was telling the truth and threw R.M.'s potty-training toilet at Mohan. *Id.* Mohan left the house, and Uncle Steve arrived. *Id.*

        After A.M. told D.M. and Uncle Steve[3] about the abuse, neither D.M. nor Uncle Steve called the police. *Id.* at 351-52. D.M. kicked Mohan out of the house the night that she learned this information, and Mohan went to Guyana about "a week after." *Id*. at 507. Mohan came back after "about four weeks," and D.M. allowed him back into the house because she "was illegal" and "needed him to help [her] get [her] paperworks [sic]." *Id.* She was also "ashamed to tell people that he was having sex with [her] daughter" and "blame[d] [her]self for letting the two of them sleep in the room." *Id.* Approximately one month after his return, Mohan resumed abusing A.M. in the house in the morning, at night, and in the afternoon when D.M. was at work. *Id.* at 353.

### D. *The Second Disclosure*

        The second disclosure occurred in November 2016, after Mohan found out that A.M. had another Facebook account. *Id*. at 361-62. That night, Mohan took A.M.'s phone, and she "left the house" without telling anyone where she was going. *Id.* at 362. A.M.'s cousin, Andrew, found her a couple of blocks away, and told A.M. that her mom

---

[3]     Uncle Steve, Mohan's brother, denied ever hearing sexual abuse allegations against Mohan from A.M. or D.M. and testified that he first learned about the allegations on the day of Mohan's arrest. Dkt. 12 at 741-42.

was looking for her.  *Id*. at 363.  A.M. said that she did not want to return, and she told Andrew "what [her] dad was doing to [her]."  *Id*. at 363.  Andrew "was [in] shock."  *Id.*

When Andrew brought A.M. back home, Uncle Steve was "waiting outside," and the two of them got into his car to speak privately.  *Id*. 363-64.  Uncle Steve asked A.M. why she left, and A.M. said it was because her dad "found out [she] had Facebook."  *Id*. at 364.  Uncle Steve then asked whether Mohan was "still doing things" to her, and A.M. replied, "Yes."  *Id*.  Mohan was coming out of the house at this point, and so Uncle Steve called him into the car with him and A.M.  *Id*.  With Mohan in the car, A.M. told Uncle Steve that her "dad [was] still having sex" with her.  *Id.*  Uncle Steve then asked Mohan if that was true, and Mohan denied it.  *Id.*  Asserting that "[A.M.] is not going to lie about it," Uncle Steve told Mohan "to stay away from his daughters."  *Id*.  Uncle Steve told A.M. to "sleep at his house that upcoming weekend" but did not tell D.M. about the abuse.  *Id*. at 367.

Approximately one week later, A.M. told D.M. about the abuse and the conversation with Uncle Steve.  *Id*. at 368-69.  D.M. told A.M. to come home and told Mohan "not to come back in the house."  *Id*. at 369.  Once again, D.M. did not call the police, *id*., and explained that she "was scared because [she] never reported it the first time," *id*. at 560.  Approximately one month after D.M. kicked Mohan out, she allowed him to return home.  *Id*. at 371.  A.M. and D.M. "would stay in the room all day" or stay with other people when Mohan stayed over at night.  *Id*.  A.M. would lock herself in her

8

room whenever Mohan was home.  *Id.*  Nothing sexual ever happened again between

A.M. and Mohan.  *Id.*

### E.    The Third Disclosure

A few months later on February 23, 2017, A.M. saw a pediatrician,

Dr. Sameera Haroon, for a physical for softball.  *Id.* at 371, 587-88.  When asked by the

doctor whether she was sexually active, A.M. answered, "Yes."  *Id.* at 372.  The doctor

then asked whether her father would be mad if he found out that A.M. was having sex,

and A.M. responded, "[I]t's my father that's been having sex with me."  *Id.*  A.M. also

told the doctor that she had told D.M. about the sexual abuse.  *Id.*[4]  The doctor then

stepped out of the room to call ACS, and D.M. came in, started crying, and "told [A.M.]

to change [her] mind because [D.M.] is going to get deported."  *Id.* at 372-73, 593.  When

the doctor came back into the room to gather more details for ACS, A.M. told her that

the "sex was [only] attempted."  *Id.* at 374.  She said this because D.M. had told her to do

so, and she feared her mother would be deported.  *Id.* 374-75.

### F.    The Arrest and Investigation

Later that day, Mohan was arrested, while A.M. and D.M. met with a

police detective and an ACS child protective specialist named Ana Diaz.  *Id.* at 375; *id.* at

518.  While speaking with the detective and Diaz privately, D.M. cried and told them

that she only "found out [about the abuse] on that day when [A.M.] went to the doctor's

---

[4]        This same week, A.M. also disclosed the abuse to her substitute English teacher.  *Id.* at 386.

office" because D.M. was scared. *Id*. at 518. D.M. and Uncle Steve attempted to get

A.M. to tell the authorities that she had "lied about the situation." *Id*. at 375-76.[5]

On March 30 and April 13, 2017, A.M. was examined by Dr. Jamie

Hoffman-Rosenfeld, a gynecological doctor and "expert in the field of child abuse

pediatrics with a specialty in child sexual abuse." *Id*. at 386-87, 664. During that exam,

Dr. Hoffman-Rosenfeld discovered a "hymenal transection" that was "indicative of prior

injury to the hymen" that had "completely healed" but was "consistent with blunt force

penetrating injury." *Id*. at 673-74. The findings were "consistent with the report of pain

and bleeding that [A.M.] provided," but Dr. Hoffman-Rosenfeld was not able to

attribute the injuries to a particular person or declare when they occurred. *Id*. at 674-76.

## II.    *The State Court Proceedings*

### A.    *The Indictment*

A 2017 Queens County indictment charged Mohan with Predatory Sexual

Assault Against a Child (N.Y. Penal Law § 130.96), Course of Sexual Conduct Against a

Child in the First Degree (*id.* § 130.75[1][B]), Rape in the Third Degree (*id.* § 130.25[2]),

Incest in the Third Degree (*id.* § 255.25), and Endangering the Welfare of a Child (*id.*

§ 260.10[1]). Queens County Indictment No. 2757/2017. At the arraignment, Mohan

---

[5]    Uncle Steve denied trying to convince or pressure A.M. to recant her allegations, Dkt. 12 at 758, while D.M. admitted at a subsequent conference with Diaz that she "had known [about the abuse] from the beginning," but was "concerned" that telling the truth would get her "deported and [her] kids to be taken away," *id.* at 523.

pleaded not guilty, and the court reportedly "advised him that he faced a sentence of life imprisonment." *See* Dkt. 11 at 6 ¶ 6.

### B.    The Trial

Mohan proceeded to a jury trial before the Honorable Richard Buchter of the New York Supreme Court, Queens County, in February 2019.  The People presented testimony from A.M., Dkt. 12 at 328-488; D.M., *id*. at 490-585; Dr. Sameera Haroon, *id*. at 585-607; Kareen Sookoo, A.M.'s school counselor, *id*. 607-13; Ana Diaz, *id*. at 617-48; Dr. Jamie Rosenfeld-Hoffman, *id*. at 658-81; and Dr. Anne Meltzer, a child psychologist, *id*. at 682-731.  The defense cross-examined each of those witnesses.  After the People rested, the defense called Uncle Steve, *id*. at 736-76; A.M.'s cousin Andrew, *id*. at 776-92; Mohan's urologist, *id*. 797-823; and A.M.'s cousin Angela, *id*. at 824-56.  The People cross-examined each of those witnesses.

During his testimony, Uncle Steve explained that he had spoken with D.M. about deportation.  *Id*. at 749-50, 769.  Uncle Steve was not permitted, however, to testify that D.M. had once witnessed an immigration raid being conducted by U.S. Immigrations and Customs Enforcement ("ICE") near her job.  *Id*. at 751.  Counsel wished to elicit that information to show D.M.'s "state of mind" regarding her worries about being deported, but the court concluded that the proposed testimony was "beyond the scope" and "[n]ot relevant."  *Id*.

Before the end of the trial, defense counsel attempted to introduce allegedly exculpatory E-ZPass records showing that Mohan was not at home when certain incidents of abuse occurred between 2014 and 2015. *Id.* at 857; *see also* Dkt. 12-2 at 149. Mohan's counsel, however, had not served a notice of alibi as required by N.Y. Criminal Procedure Law § 250.20. Dkt. 12 at 857-59. Counsel attempted to justify that failure on the basis that she had just ordered the records, and "didn't know what the records were going to show," *id.* at 859, but the court found that that did not constitute good cause, *id.* at 859-64. According to the court, Mohan's counsel was required to "advise" the People of the potential alibi as soon as she was aware of it, even if there was a chance that Mohan would not actually pursue it at trial. *Id.* at 860. Mohan's counsel argued that her client would be "prejudiced" by not being able to present that defense, *id.* at 862-63, but the court found that the People would be more prejudiced because "they've already rested[,] [w]e're at the end of the case, and they haven't had an opportunity to investigate anything," *id.* at 861, 863. Holding that there was no good cause for Mohan's counsel to "wait until the People have rested," *id.* at 858, to raise the alibi when she had been "aware of [it]" long before the trial began, *id.* at 859; *see also id.* at 861, the court barred Mohan from introducing the E-ZPass records.

### C.    *Verdict and Sentencing*

After the seven-day trial, the jury convicted Mohan of Predatory Sexual Assault Against a Child (N.Y. Penal Law § 130.96), Rape in the Third Degree

12

(*id*. § 130.25[2]), Incest in the Third Degree (*id*. § 255.25), and Endangering the Welfare of a Child (*id*. § 260.10[1]).  Dkt. 12 at 1011-14.

In August 2019, the court sentenced Mohan to an indeterminate prison term of from thirteen years to life on the predatory sexual assault count, a prison term of four years and three years of post-release supervision on each of the rape and incest counts, and a prison term of one year for the endangering count.  Dkt. 12-1 at 115-7.  All sentences were to run concurrently.  *Id*.

### D.    *The Motion to Vacate the Conviction*

After his conviction but before his sentencing, Mohan, through new counsel, filed a motion to vacate his conviction under N.Y. Criminal Procedure Law §§ 330.30 and 440.10 in May 2019.  Dkt. 12-2 at 45-120.  In that motion, Mohan argued that he was denied the effective assistance of counsel for three reasons.

First, Mohan claimed that counsel failed to file an alibi notice for the E-ZPass records, taking away his ability to argue that defense before the jury.  *Id*. at 58-66; *see also id.* at 81-115 (E-ZPass records).  "Although this proof does not cover the entire time period complained of and although not all the incidents allegedly occurred during after-school hours," Mohan argued that the records at least "cover the time period of the most serious charge" and "casts grave doubt on [A.M.'s] testimony in general."  *Id*. at 48.

Second, Mohan argued that his counsel failed to investigate a potential alibi when she failed to contact and obtain trial testimony from Mohan's former

13

employer, Ramdeo Persaud, and Persaud's cousin, Mohabir Poonai. *Id.* at 48, 51-52.

According to Mohan, he "worked as the driver" for Persaud and Poonai between 2014

and late 2015, and he was often on the road driving Persaud and Poonai to various

locations at times when A.M. claimed that Mohan was sexually abusing her. *Id.* at 48.

In other words, their testimony would have served as "further corroboration" for his

alibi. *Id.*; *see also id.* at 74-75 (affidavit of Persaud); *id.* at 76-77 (affidavit of Poonai)

Again, Mohan argued that although that testimony would not have covered the entire

period complained of nor all the incidents alleged, it would have covered the period of

the most serious charge and cast grave doubt on A.M.'s testimony. *Id.* at 48.

Third, Mohan claimed that counsel "never informed him that if he rejected

the plea and were convicted at trial, he would face a maximum life sentence." *Id*. at 49,

66-70. He argued that counsel "depriv[ed] him of information that would have been of

obvious relevance to a relatively young defendant considering whether to take a two-

year plea deal." *Id*. at 66-67. Mohan alleged that, despite his innocence, "he would have

taken the [two-year] plea if he had known he might face life." *Id*. at 49.

On July 26, 2019, the court advised that "it would treat the defendant's

motion as a premature motion to vacate his conviction pursuant to CPL § 440.10 and

would conduct a hearing on the motion after the imposition of sentence" in

August 2019. *Id.* at 122. Accordingly, after Mohan was sentenced, the court held a §

440.01 hearing that spanned three days between October 17, 2019, and January 14, 2020. *See* Dkt. 12 at 1017-48; Dkt. 12-1 at 1-108.  Four witnesses testified.  *Id.*

       In an order dated September 1, 2020, the court addressed each of Mohan's ineffective assistance of counsel arguments and denied Mohan's motion.  Dkt. 12-2 at 121; *id.* at 122-54 (memorandum).  With respect to Mohan's alibi-notice claim, although the court agreed that Mohan's counsel's "failure to serve an alibi notice when she became aware of the existence of E-ZPass records fell below an objective standard of reasonableness," *id.* at 144, it also held that her failure did not prejudice the defendant nor was it sufficiently egregious so as to compromise his right to a fair trial, *id.* at 148-51.  The court reasoned that even if they were admitted, the E-ZPass records covered only a limited period of time, and so "could not have completely exonerated the defendant if credited by the jury because it constituted a partial alibi which did not encompass all of the charged acts committed . . . and was not of such strength as to significantly impeach [A.M.'s] credibility."  *Id.* 150-51.

       With respect to Mohan's failure-to-investigate claim, the court concluded that Mohan failed to show that his counsel's failure to investigate rendered her representation constitutionally deficient because she was never made aware of that potential alibi in the first place.  Specifically, Mohan never mentioned or gave any information about either witness, as evidenced by the fact that counsel's handwritten notes about the case contained no reference to either person.  *Id.* at 146-47.

15

Finally, the court concluded that Mohan's plea-advice claim also failed because he failed to "show[] that there was a reasonable probability that he would have accepted [the two-year] plea agreement" had he been advised of the maximum sentence of life. *Id.* at 152-53. To begin, "there [was] no evidence that [Mohan] was ever offered a plea that would have allowed him to receive a sentence of two years of imprisonment." *Id.* at 152; *see also* Dkt. 12 at 1023.[6] Moreover, even assuming a two-year plea offer was made, it had to have been made before he was charged with a crime that carried the maximum sentence of life. Dkt. 12-2 at 1152; *see also* Dkt. 12 at 1024-25. Finally, Mohan "maintained his innocence up until the day of trial" and told his counsel that "he was not willing to plead guilty to something that he did not do." Dkt. 12-2 at 152; *see also* Dkt. 12 at 1023 (testimony from Mohan's counsel that Mohan did not want to plead guilty, even if she secured a lesser sentence or probation, because he did not want to register as a sex offender).

### E.    *The Direct Appeal and Appeal from the Motion to Vacate Judgment*

On December 9, 2020, the Appellate Division, Second Department granted Mohan leave to appeal the denial of his § 440.10 motion and consolidated that appeal with his direct appeal. Dkt. 11-1 at 7. With respect to his appeal of the trial court's § 440 decision, Mohan, through retained counsel, again argued that he was denied effective

---

[6]    In this Petition, Mohan acknowledges that "there were some differences between [his] testimony and that of defense counsel -- for instance, whether the [plea] offer was two years or four, and whether she told him that he was facing a long prison stretch if convicted at trial." Petition at 34.

assistance of counsel because his trial attorney failed to file an alibi notice, to present the

testimony of Persaud and Poonai, and to inform Mohan of the potential sentencing

exposure of life imprisonment. Dkt. 12-3 at 17-36. Mohan also advanced three issues to

challenge his conviction. *Id*. at 36-44. First, he argued that the trial court erred in

precluding the E-ZPass records. *Id*. at 36-39. Second, Mohan challenged the court's

preclusion of testimony by Uncle Steve regarding D.M.'s fears of deportation. *Id*. at 39-

42. Third, Mohan claimed that the cumulative weight of the evidentiary errors in his

first and second points required reversal. *Id*. at 42-44.

   In a decision dated April 12, 2023, the Appellate Division affirmed

Mohan's convictions and the denial of his § 440.10 motion on all grounds. Dkt. 11-1 at

33-35; *Mohan I*, 187 N.Y.S.3d at 293. Regarding the failure to file an alibi notice or

present alibi evidence, the court held that although his trial counsel's performance was

"deficient," Mohan's challenges failed because he did not "show that but for defense

counsel's unprofessional error, the result of the proceeding would have been different

or that defense counsel's error was so egregious and prejudicial that it denied him

meaningful representation." Dkt. 11-1 at 35; *Mohan I*, 187 N.Y.S.3d at 292.

   The court then rejected Mohan's claim regarding counsel's ineffectiveness

during plea negotiations on factual grounds. First, it was "undisputed that the Supreme

Court advised the defendant that he faced life imprisonment upon his arraignment on

the indictment," and that counsel "advised the defendant that he faced a long prison

sentence if he lost at the trial."  Dkt. 11-1 at 34; *Mohan I*, 187 N.Y.S.3d at 292.  The court

further noted that, at best, a four-year plea offer was made before Mohan was charged

with a crime that carried the maximum sentence of life, and that "there never was an

offer of less than four years of imprisonment" in any event.  Dkt. 11-1 at 34; *Mohan I*, 187

N.Y.S.3d at 292.  The Appellate Division affirmed the convictions and the § 440.10

decision, holding that "[t]here is no basis to set aside the . . . credibility findings"

underlying the relevant factual determinations.  *Mohan I*, 187 N.Y.S.3d at 292.

      The Appellate Division thus concluded that Mohan "failed to establish

that he was denied the assistance of counsel under either the federal or state

constitutional standards."  Dkt 11-1 at 35; *Mohan I*, 187 N.Y.S.3d at 293.  It also held that

Mohan's "alternative contention that he was not required to serve a notice of alibi based

on his E-ZPass records is unpreserved for appellate review and, in any event, without

merit."  Dkt. 11-1 at 35; *Mohan I*, 187 N.Y.S.3d at 293.  Finally, it held that Mohan's

"remaining contention is without merit."  Dkt. 11-1 at 35; *Mohan I*, 187 N.Y.S.3d at 293.

      On June 30, 2023, the New York Court of Appeals denied Mohan's

application for leave to appeal.  Dkt. 11-1 at 5; *Mohan II*, 40 N.Y.3d at 930.

## III.    *The Petition*

      In the Petition, Mohan seeks habeas relief on the four grounds raised in

his consolidated appeal.  Dkt. 1.  Respondent opposed the Petition on February 27, 2025.

Dkt. 11.  Mohan filed a reply on April 14, 2025.  Dkt. 14.

*DISCUSSION*

**I.    *Federal Review of State Convictions***

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015) (citing *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009)).  "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'"  *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam) (quoting *Harrington*, 562 U.S. at 102).

**II.    *Analysis***

Mohan contends that he is entitled to habeas relief because (1) he received ineffective assistance of counsel, (2) the trial court erroneously excluded alibi evidence, (3) the trial court erroneously precluded testimony concerning discussions about

19

deportation, and (4) the cumulative weight of evidentiary errors requires a new trial. The respondent opposes each basis for habeas relief and, additionally, argues that a subset of these claims is procedurally barred because Mohan did not raise them in state court. I address each claim in turn.

### A.      The Ineffective Assistance of Counsel Claim

The bulk of the Petition is dedicated to Mohan's argument that his trial counsel was ineffective in failing (1) to serve a pretrial alibi notice covering the E-ZPass records, adequately investigate the alibi, or present the alibi evidence; and (2) to advise him of his sentencing exposure. Both arguments fail.

In general, to prevail on a claim of ineffective assistance under federal law, a petitioner must (1) show that counsel's performance was so deficient as to fall below "an objective standard of reasonableness" and (2) establish prejudice by demonstrating a "reasonable probability" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 669, 688, 694 (1984). In the context of a habeas petition under 28 U.S.C. § 2254, "[e]stablishing that a state court's application of *Strickland* was unreasonable . . . is all the more difficult. The standards created by *Strickland* and section 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (collecting cases). Therefore, "[t]he operative question" when a federal court reviews a state court's ineffective assistance of counsel ruling is "not whether [the] federal court

believes the state court's determination was incorrect, but rather whether that determination was objectively unreasonable." *Waiters*, 857 F.3d at 478 (alterations adopted) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

Showing that the state court's determination was objectively unreasonable is particularly difficult here because the standard for establishing an ineffective assistance of counsel claim under New York law is lower than under federal law. *See People v. Honghirun*, 29 N.Y.3d 284, 289 (2017). In New York, a defendant must show only "that counsel failed to provide meaningful representation." *People v. Alvarez*, 33 N.Y.3d 286, 289 (2019) (first citing *People v. Stultz*, 2 N.Y.3d 277, 284 (2004); and then *People v. Baldi*, 54 N.Y.2d 137, 147 (1981)). Unlike the federal standard, *see Strickland*, 466 U.S. at 694, the state standard does not require the defendant to demonstrate that he or she was prejudiced by the ineffective assistance. *See Alvarez*, 33 N.Y.3d at 289.

### 1.    *The Alibi-Related Failures*

First, Mohan has failed to meet his burden of showing that various alibi-related failures rendered his trial counsel ineffective because Mohan has failed to show prejudice. "To establish prejudice under *Strickland*, a habeas petitioner must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Waiters v. Lee*, 857 F.3d 466, 479 (2d Cir. 2017) (quoting *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005)). This chance of an alternate result, however, "must be 'substantial, not just conceivable.'" *Id.* (quoting

*Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)). For example, habeas relief on this ground is "generally not warranted" where a conviction is "supported by overwhelming evidence of guilt." *Id.* (quoting *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001)). Mohan advances two separate alibi-related arguments, which I address in turn.

Mohan's main argument is that his trial counsel was ineffective because she failed to file an alibi notice, as required by N.Y. Criminal Procedure Law § 250.20, which had the effect of foreclosing an alibi defense based on Mohan's E-ZPass records. Although the state courts found that this failure placed Mohan's counsel's performance "below an objective standard of reasonableness," they rejected Mohan's ineffectiveness claim because he failed to prove prejudice. Dkt. 12-2 at 144-51 (trial court); Dkt. 11-1 at 34-35 (Appellate Division); *Mohan I*, 187 N.Y.S.3d at 292 (same). On habeas review, those decisions were not "contrary to," and did not involve "an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). As the state courts pointed out, the E-ZPass records implicated only a limited time span, and so even if they were admitted, they would not have presented a complete defense, nor would they have damaged A.M.'s credibility. *See* Dkt. 11-1 at 34-35 ("[T]he precluded . . . alibi testimony had very limited probative value because, even if found credible and accurate, it left a substantial gap in time within which defendant would have had the opportunity to commit the crime[s] in question." (second alteration in original) (quoting *People v. Matthews*, 714 N.Y.S.2d 479, 480 (1st Dep't 2000)); *Mohan I*,

187 N.Y.S.3d at 293 (concluding that "the [trial] court's conclusion that the E-ZPass records would not have significantly impeached the complainant's testimony is supported by the record").  Mohan's ineffectiveness claim on this ground fails because, "even if timely filed, the alibi notice had limited probative value and therefore the outcome of the trial would not have differed had the attorney timely filed notice." *Humphrey v. Fisher*, No. 9:07-CV-1200-TJM/DRH, 2010 WL 7417094, at *7 (N.D.N.Y. July 23, 2010) (rejecting ineffectiveness claim for failure to file an alibi notice because it "covered one day during the month of March while the indictment was not specific as to on what day in March the incident occurred."), *report and recommendation adopted*, No. 07-CV-1200, 2011 WL 4055407 (N.D.N.Y. Sept. 12, 2011).  At best, Mohan shows that an alternative result is possible with the admission of his E-ZPass records; "possible," however, is not enough.  *See Waiters*, 857 F.3d at 479 (the chance of an alternative result must be "substantial").

    In addition to the defense counsel's failure to serve an alibi notice, Mohan claims that his counsel was ineffective because she failed to adequately investigate -- and ultimately, present the testimony of -- exculpatory witnesses Persaud and Poonai. This claim also fails because Mohan has failed to show that this failure rendered his counsel's performance deficient or that it resulted in prejudice.  To begin, Mohan did not tell his counsel about either of those witnesses.  Both the trial court and the Appellate Division "credited defense counsel's hearing testimony that the defendant did

not tell her that there were certain witnesses who could potentially establish that the defendant was the person operating the vehicle equipped with the subject E-ZPass," Dkt. 11-1 at 34; *Mohan I*, 187 N.Y.S.3d at 292, and this Court may not disrupt factual determinations absent clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e).  Although Mohan contends that "it was not [his] job to tell his attorney about potential witness -- it was her job to ask," Dkt. 11-1 at 28, "[c]ounsel's actions are usually based, quite properly, on the informed strategic choices made by the defendant and on information supplied by the defendant," *Strickland*, 466 U.S. at 691.  In any event, "the tactical decision of whether to call specific witnesses -- even ones that might offer exculpatory evidence -- is ordinarily not viewed as a lapse in professional representation."  *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997); *see also United States ex rel. Walker v. Henderson*, 492 F.2d 1311, 1314 (2d Cir. 1974).  Finally, neither Persaud nor Poonai could have been adequate exculpatory witnesses because their testimony would not have impeached A.M.'s testimony or exonerated Mohan.  *See Bobby v. Van Hook*, 558 U.S. 4, 11-12 (2009) (holding that counsel's failure to interview potential witnesses not ineffective where potential testimony would not have added significant value to overall defense).  Thus, this failure did not constitute ineffective assistance, either.

### 2. *The Sentencing Exposure Failure*

Second, Mohan claims that his counsel rendered ineffective assistance because she failed to inform him that he faced a possible life sentence if convicted. At the § 440.10 hearing, Mohan stated that, if properly informed of the possibility of a life sentence, he "would have take[n] the two year [plea]." Dkt. 12-1 at 73. And when asked by the judge whether he understood that a plea required "admit[ting] this happened under oath," Mohan replied, "[I]t would be hard to admit something I didn't do. But I probably, if I hear life, if I know it would have go this way, and I had a choice, I would choose two than getting life." *Id.*

"To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 147 (2012). Mohan has not made this showing for multiple reasons. Most fundamentally, even if Mohan was not notified that he faced a maximum sentence of life specifically, he was at least notified that he faced a "very, very long" sentence if convicted -- both by court during his arraignment, *see* Dkt. 11 at 6 ¶ 6, and by his lawyer prior to trial, *see* Dkt. 12 at 1105 ("I did have conversations with Mr. Mohan as well as his family before the case went to trial. . . .  I said, well, if you're found not guilty we are walking out of the courtroom; and if you're found guilty you're going to be going to

prison for a very, very long time.").  Moreover, although Mohan testified that he would

have taken a two-year plea had he been informed that he specifically faced a maximum

sentence of life, *see* Dkt. 12-1 at 73, the state court determined that "there is no evidence

that he was ever offered a plea that would have allowed him to receive a sentence of

two years of imprisonment."  Dkt. 12-2 at 152.  The court determined that, at best,

Mohan "was offered a pre-indictment plea that would have allowed him to receive a

sentence of four years of imprisonment, and that he rejected this plea offer both because

it would have required [registration as a sex offender], and because he adamantly

maintained his innocence."  *Id.*; *see also id.* ("[T]he defendant conceded that he had

maintained his innocence up until the day of trial, that he told [his counsel] that he was

not willing to plead guilty to something that he did not do, and that he was not going to

be willing to lie under oath to enter a guilty plea.").  Because Mohan has failed to show,

by clear and convincing evidence, that these factual determinations are incorrect, he is

not entitled to habeas relief on this ground.  *See* 28 U.S.C. § 2254(e)(1).

> **B.    *Erroneous Exclusion of Alibi Evidence Claim***

Next, Mohan argues that the trial court erred in excluding the E-ZPass

records and associated witness testimony because it did not make the requisite finding

of willfulness, citing the Second Circuit's decision in *Noble v. Kelly*, 246 F.3d 93

(2d Cir. 2001).[7]  This challenge fails.  As a preliminary matter, this challenge is

procedurally barred because Mohan did not raise it in his direct appeal or collateral

challenges, raising it in the Petition for the very first time.  *See, e.g.*, *Jimenez v. Walker*, 458

F.3d 130, 149 (2d Cir. 2006) ("[B]ecause [the petitioner] has not properly exhausted his

state remedies by fairly presenting his claim to the state courts and may no longer do

so, . . . [he] has procedurally defaulted his . . . claim.").

        Nevertheless, this challenge fails on the merits as well.  In *Noble v. Kelly*,

the Second Circuit expressly declined to decide the issue of "whether, and to what

extent, a finding of willfulness is required in every case" where a trial court decides to

exclude alibi evidence.  *Id.* at 100 n.3.  Instead, it specified that "a trial court's exclusion

of alibi testimony must be supported by a finding of some degree of willfulness in

defense counsel's violation of the applicable discovery rules" only "where prejudice to

the prosecution can be minimized with relative ease."  *Id.*; *see Wade v. Herbert*, 391 F.3d

135, 145 (2d Cir. 2004) (clarifying that *Noble* does not suggest "that a stay state court may

---

[7]        In his appeal to the Appellate Division, Mohan also argued that the trial court erred in excluding
the E-ZPass records under the alibi notice rule because the rule only applied to alibi witnesses, not alibi
documents.  The Appellate Division reviewed that challenge and concluded that it was "unpreserved for
appellate review and, in any event, without merit."  Dkt. 11-1 at 35; *Mohan I*, 187 N.Y.S.3d at 293.
Recognizing that the Appellate Division's decision was based on an independent and adequate state law
ground, Mohan explicitly abandoned this argument in his Petition.  *See* Petition at 37 n.5; *see also, e.g.*,
*Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("It is not the province of the federal habeas court to reexamine
state-court determinations on questions of state law.");  *Garraway v. Phillips*, 591 F.3d 72, 75 (2d Cir. 2010)
("When a state court has decided a case on an independent and adequate state ground -- whether
substantive or procedural -- we decline to review the state court's decision.").  *Cf. People v. Himmel*, 686
N.Y.S. 504, 506 (3d Dep't 1999) (applying the alibi notice rule to exclude employment records because the
"defendant was aware of this evidence at least two months prior to trial [and] provided no notice of alibi,
nor did he move to file a late notice").

not lawfully exclude an alibi witness where . . . the late notice irremediably prejudiced the People"). *Noble* is thus distinguishable for the simple reasons that, contrary to Mohan's assertions, the trial court here not only made a finding of willfulness but also stated that the People would be prejudiced by the late introduction of alibi evidence. *See* Dkt. 12 at 859-60 (finding that there was no good cause for Mohan's counsel to "wait until the People have rested" to raise the alibi when she had been "aware of [it]" long before the trial began); *id.* at 861-63 (finding that the People would be prejudiced by the introduction of the evidence because "they've already rested[,] [w]e're at the end of the case, and they haven't had an opportunity to investigate anything"). Mohan is therefore not entitled to habeas relief on this ground.

### C.    *Preclusion of Testimony Claim*

Next, Mohan argues that the trial court erroneously precluded Uncle Steve's testimony regarding his discussions with D.M. about deportation. At trial, the court permitted Uncle Steve to testify that he "ha[d] a conversation with [D.M] about deportation, and this is when it occurred" but excluded testimony regarding ICE raids that occurred "very close to where [D.M.] worked" because they were "beyond the scope" and "not relevant." Dkt. 12 at 748-51. Mohan argues that the excluded testimony was relevant and admissible because "it bears on the state of mind of one of the participants," and "there is no basis for the trial court's suggestion that state-of-mind evidence must relate to the mental state of a party to the case." Petition at 41.

28

This claim, however, fails because "state trial court evidentiary rulings generally are not a basis for habeas relief." *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012). The trial court excluded specific testimony on the basis that it was "beyond the scope" and "not relevant," Dkt. 12 at 751, and the Appellate Division affirmed, finding Mohan's challenges to that holding to be "without merit," Dkt. 11-1 at 35; *Mohan I*, 187 N.Y.S.3d at 293. These conclusions made by the state courts were well-reasoned, and it was squarely within the state trial court's discretion to exclude Uncle Steve's testimony through the application of state evidentiary rules. *See Crane v. Kentucky*, 476 U.S. 683, 689 (1986) (acknowledging a "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts"). This Court will not disturb state court decisions that rest on independent and adequate state law grounds. *Garraway v. Phillips*, 591 F.3d 72, 75 (2d Cir. 2010) ("When a state court has decided a case on an independent and adequate state ground -- whether substantive or procedural -- we decline to review the state court's decision.").

Moreover, even assuming that the trial court erred, Mohan has failed to show that any error here violated "fundamental conceptions of justice." *Vega*, 669 F.3d at 126; *see Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) ("A *habeas* petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted."). As noted above,

even though the trial court excluded testimony about specific ICE raids that took place near D.M.'s place of work, it nevertheless allowed testimony about D.M.'s fears of deportation more generally, including when those discussions took place.  *See* Dkt. 12 at 749.  D.M. also testified on numerous other occasions that she feared deportation.  *See id.* at 523; Petition at 40.  Moreover, in her summation, defense counsel was able to use extensively Uncle Steve's testimony about the deportation discussion to argue that D.M. "is willing to do whatever is necessary for her to be able to stay in the United States." Dkt. 12 at 905.  Because the exclusion of ICE raid testimony had only a limited effect on his defense, Mohan cannot -- and does not -- show that "it is more likely than not that a reasonable juror would have convicted him in light of [that] evidence."  *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  Accordingly, Mohan is not entitled to habeas relief on this ground.

## D.    *Cumulative Weight of Evidentiary Errors Claim*

Lastly, Mohan argues that the cumulative weight of evidentiary errors in this case requires a new trial.  But "[z]ero plus zero is zero."  *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 138 F.3d 33, 38 (2d Cir. 1998) (Winter, *J.*).  Here, "[b]ecause none of [Mohan's] individual claims of purported constitutional error was found to have merit, [his] claim that the cumulative effect of constitutional error denied him a fair trial also does not warrant habeas relief."  *Fox v. Martuscello*, No. 16-CV-5416 (CBA), 2019 WL 4805527, at *15 (E.D.N.Y. Sept. 30, 2019).

## *CONCLUSION*

Mohan has failed to show any basis for relief under 28 U.S.C. § 2254.

Accordingly, the Petition is denied.  Additionally, I decline to issue a certificate of

appealability because Mohan has not made a substantial showing of the denial of a

constitutional right.  *See* 28 U.S.C. § 2253(c)(2).

SO ORDERED.

Dated:      New York, New York
            July 28, 2025

_____
DENNY CHIN
United States Circuit Judge
Sitting By Designation